UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH LOSANO,       )<br>    Plaintiff,       )<br>       )<br>v.       )<br>       )<br>THE TOWN OF SWAMPSCOTT, *et al.*,       )<br>    Defendants.       )<br>       ) | C.A. NO. 02-11111-MEL |

**PLAINTIFF LOSANO'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, Joseph Losano, and hereby opposes the summary judgment motion of the Defendants on the grounds that material issues of fact are still in dispute which must be decided by a jury. As grounds therefore, the Plaintiff incorporates his L.R. 56.1 statement of disputed material facts and submits this memorandum of law.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is required only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The evidence before the Court must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

Once the moving party has served a properly supported motion asserting entitlement to summary judgment, the burden is on the non-moving party to present evidence showing the existence of a trial-worthy issue. Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004), citing Anderson v. Liberty Lobby Inc., 477 U.S.

242, 248 (1986). For the purpose of summary judgment, an issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citations omitted). "Material" facts are those which possess "the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

## ARGUMENT

### I. THE PLAINTIFF HAS PRODUCED SUFFICIENT EVIDENCE THAT THE DEFENDANTS RETALIATED AGAINST HIM FOR EXERCISING HIS FIRST AMENDMENT RIGHTS

The Defendants are not entitled to summary judgment because the facts, taken in a light most favorable to the Plaintiff, show that the Defendants retaliated against the Plaintiff for exercising his First Amendment rights. Specifically, the Plaintiff has shown that the Defendants Toomey, Lord, Madigan and Waters orchestrated the filing of a criminal complaint against the Plaintiff because he sought judicial review of his gun license revocation.

In order to sustain his First Amendment claim, the Plaintiff need not show that only motivation for the Defendants' actions was the Plaintiff's exercise of his First Amendment rights. Rather, the Plaintiff must only show that his conduct was constitutionally protected and that the Defendants adverse actions were substantially motivated by that conduct. Mt. Healthy City School Dist. Bd. of Education v. Doyle, 429 U.S. 274, 287 (1977). Furthermore, the Plaintiff need not show direct evidence of the Defendants' intent; he may sustain his burden with circumstantial evidence that the Defendants' were motivated by a desire to chill his right to free speech or to punish the

2

Plaintiff for exercising that right.  See Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993).

The Defendants concede, as they must, that the Plaintiff's appeal of his gun license revocation is a constitutionally protected activity.  See Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004), citing Cal. Motor Transp. Co. v. Trucking Unltd., 404 U.S. 508, 510 (1972) (the Supreme Court has consistently recognized the First Amendment "right to petition all branches of the government, including the courts."); United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967). (the right to petition the government for redress of grievances is "intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press.")

Having clearly satisfied the first prong of the Mt. Healthy test, the Plaintiff may proceed on his §1983 claim so long as he offers sufficient evidence that his filing of the appeal (the protected activity) was a substantial or motivating factor in the seeking of the criminal complaint (the retaliatory act), even if his appeal was not the only reason for the Defendants' retaliatory actions.  Baron v. Suffolk County Sheriff's Dep't, 402 F.3d 225, 236 (1st Cir. 2005).  Importantly, this Circuit has recognized that "[a] retaliatory state of mind typically is not susceptible to proof by direct evidence." Powell, 391 F.3d at 17, quoting Ferranti v. Moran, 618 F.2d 888, 892 (1st Cir. 1980).  Therefore, a crucial factor in determining whether an action was taken in retaliation for protected activity is the closeness in time of the two events.  Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003) (in the context of First Amendment retaliation by a public entity against a citizen, "close temporal proximity between two events may give rise to an inference of causal connection.")

At the beginning of June, 2000, Toomey learned that the Plaintiff intended to appeal the license revocation.  See Pl. Stmnt Mat. Facts at 16.  The Plaintiff's appeal was filed on June 12, 2000.  Id. at 17.  The next day, Defendant Toomey instructed Madigan to file a criminal complaint against the Plaintiff.  Id. at 18.  One day later, Defendant Madigan told Defendant Waters to file the complaint, and he did so.  Id. at 19.  Such "temporal proximity" certainly gives rise to a permissible inference, and is sufficient for a jury to find, that the seeking of the complaint was at least substantially motivated by the Plaintiff's commencement of the appeal against Defendant Toomey.  See Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) (recognizing retaliatory prosecution claim where police instituted criminal charges after receiving indication of plaintiff's intent to file civil suit).

Even beyond the temporal proximity, however, there is additional evidence that the complaint was sought in retaliation for the Plaintiff's filing for judicial review.  In his ruling on the Plaintiff's license revocation appeal, the judge found that Defendant Madigan, during his May 10, 2000 interview with the Plaintiff, had conveyed "the impression that any proposed adverse actions would be withdrawn if Losano sought a position on another police force."  See Pl. Stmnt Mat. Facts at 12.  The Plaintiff testified that Defendant Madigan offered a direct and clear quid pro quo.  Id. at 11.  This evidence certainly raises a triable issue as to whether Madigan made such an offer and whether the failure to accept said offer was the motive behind the filing of the complaint.

Moreover, the evidence in the record clearly shows that all Defendants were aware of the Williams incident by May 8, 2000, and that Defendant Lord was aware of it some time earlier.  Id. at 6.  Furthermore, Between May 8 and June 12, 2000, the officers

4

learned nothing more about the incident and were not planning on filing criminal charges. Id. at 14, 15. Yet a day after the Plaintiff filed suit against Defendant Toomey, plans were put in motion to file the complaint. Id. at 16-18. This strongly suggests that the filing of the Plaintiff's appeal motivated the Defendants' to follow through on their previous threat to the Plaintiff.

Defendants argue that Toomey was already considering seeking a criminal complaint before the Plaintiff sought judicial review, and thus they did not retaliate by subsequently following through on their previous intentions. See Def. Memo Sum Judg. at 8. Yet, as stated above, the evidence shows that the Defendants held the possibility of criminal charges over the Plaintiff's head, and decided to initiate them because the Plaintiff engaged in a protected activity—appealing Toomey's license revocation decision. Furthermore, the law is clear that the Plaintiff is still entitled to recover for First Amendment retaliation even if the Defendants were partly motivated by non-retaliatory animus. Since the Plaintiff has shown sufficient evidence that retaliation was a substantial or motivating factor in the Defendants' actions, then the Defendants are not entitled to summary judgment.[1]  Duffy v. Sarault, 892 F.2d 139, 143 (1st Cir. 1989).

## II. THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

### A. THE MASSACHUSETTS CIVIL RIGHTS ACT IS CO-EXTENSIVE WITH §1983

The Supreme Judicial Court has stated that the Massachusetts Civil Rights Act "MCRA" and §1983 are parallel statutes, coextensive with each other. See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985); Canney v. Chelsear, 925 F. Supp 58,

---

[1] The Defendants have not argued that they are entitled to qualified immunity and, as such, the defense is waived. See Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664, 668 (1st Cir. 1996)

5

68 (1st Cir. 1996).  Accordingly, the argument in Sections I, supra, with respect to Plaintiff's claims brought pursuant to §1983 apply with equal force to Plaintiff's claims pursuant to the MCRA.  More specifically, if this Court finds that the Defendants' actions were intended to punish or chill the Plaintiff's civil right to petition the courts, then certainly the act of taking out a criminal complaint would be considered threats, intimidation and coercion.  As such, since the plaintiff has presented sufficient evidence of his federal claims, summary judgment is certainly not appropriate on his claims brought under the MCRA.

### B. THE PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE OF ABUSE OF PROCESS

The tort of abuse of process is the use of lawful process primarily for a purpose for which it is not designed.  J.R. Nolan & L.J. Sartorio, Tort Law § 82, at 108 (2d ed. 1989).  The elements of an abuse of process claim are that: "(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775-76 (1986).  Probable cause is irrelevant to an abuse of process claim: "It is immaterial that the process [was] brought with probable cause . . . or even that the proceedings terminated in favor of the person instituting or initiating them." Quaranto v. Silverman, 345 Mass. 423, 426 (1963), quoting Restatement of Torts § 682.  In the case at bar, it is undisputed that process was used and that the Plaintiff suffered damages (i.e. attorneys fees, lost wages).  The only real issue in this case is the second element, whether the process was used for "an ulterior or illegitimate purpose." Datacomm Interface, Inc., 396 Mass. at 775-76.

As in Section I, supra, the Defendants did use the legal process for an illegitimate purpose, namely in retaliation for the Plaintiff's exercise of his First Amendment rights.

The evidence shows that the Defendants had no intention of filing a criminal complaint against the Plaintiff until he filed his appeal.  Solely related to the Plaintiff's pre-employment screening, Defendant Waters went to investigate the rumor regarding the Lou Williams incident, which Defendant Lord had learned about second-hand months earlier.  See Pl. Stmnt Mat. Facts at 6, 7.  Waters learned that the incident had occurred years prior and had never been reported to the police.  No other investigation was done in an attempt to corroborate Williams' statement, even assuming it stated a crime in the first place.  On the contrary, Defendant Waters exaggerated the incident in his report and acted recklessly with respect to the details of this alleged encounter.  Id. at 6-10; 19-23.

For five weeks, the Defendants took no action and learned no more information other than the statements made to Waters by Williams.  Id. at 15.  Then, one day after the Plaintiff sought judicial review of his license revocation, the Defendants applied for a criminal complaint against him.  Id. at 18-19.

Defendants contend that the Plaintiff has not shown there was any advantage gained or attempted to be gained by the initiation of the criminal process.  Yet Massachusetts case law shows that the initiation of process itself can at times be so coercive and "promoting of ulterior advantage" that it alone supports an abuse of process claim, even if that advantage was not ultimately gained.  Adams v. Whitman, 62 Mass. App. Ct. 850, 856 (2004) (collecting cases).  In this case, a successful criminal prosecution of the Plaintiff would have insured the failure of his appeal.  See M.G.L. ch. 140, §122 (convicted felons are not eligible for gun licenses).  The Plaintiff has shown that the Defendants were motivated by that a purpose, and were not interested in justice for Williams, the supposed victim.  Furthermore, Defendant Toomey testified that he

would never hire a police officer who did not have a firearms license.  See Pl. Stmnt Mat. Facts at 9.  Thus the simple act of revoking the Plaintiff's gun license was an abuse of process because it was designed to keep him from working for the Swampscott Police Department and had nothing to do with the Plaintiff's suitability to carry a firearm.

### C.  THE PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE OF MALICIOUS PROSECUTION

To make out a claim for malicious prosecution, a plaintiff must prove: "(1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff." Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 405 (2002).  In the civil context, probable cause is a matter for the jury if the facts are disputed.  New Bedford Hous. Auth. v. Olan, 50 Mass. App. Ct. 188, 203 n.26 (2000); see also Lewis v. Kendrick, 944 F.2d 949, 952 (1st Cir. 1991) (probable cause matter for jury in claim under 42 U.S.C. §§ 1983, 1985).

Probable cause may not be conclusive, however, "where evidence later surfaces that eliminates probable cause, and the police are involved in pursuing the action despite the discovery of this evidence."  Gutierrez, 437 Mass. at 406; see also Lowth v. Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (information discovered by a defendant in an malicious prosecution action after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause in cases where the prosecution follows a warrantless arrest).

It is undisputed that the criminal proceedings terminated in the Plaintiff's favor. Moreover, as discussed above, the Defendants in seeking the complaint were wholly or

substantially motivated by a desire to retaliate against the Plaintiff for appealing his revocation and to ensure he was not accepted onto the police force.

As to the lack of probable cause, the Plaintiff's key evidence is that the "victim" himself, Williams, did not even corroborate the Defendants' version of events.  The Defendants claim that the Plaintiff brandished the weapon; Williams denies ever saying that.  The Defendants claim the incident happened in 1998, where as Williams said it was 1995.  The Defendants claim the incident was an assault, whereas Williams thought nothing of it and never reported it to the police.  Even the officer who interviewed Williams, Defendant Waters, stated that he did not think the incident was a crime, and only filed the complaint because he was ordered to so do.  See Pl. Stmnt Mat. Facts at 8, 10, 20, 21, 23.

This is not a case where a police report containing the credible statement of the victim is alone sufficient for probable cause.  Cf. Paquette v. Commonwealth, 440 Mass. 121, 134 (2003).  Here the victim denies the substance of the allegations in that report.  Thus the Defendants cannot rely on an inaccurate police report in support of probable cause.

Defendants contend, of course, that probable cause existed because Williams was in imminent fear of bodily harm.  Putting aside the fact that Williams thought nothing of the incident, see Pl. Stmnt Mat. Facts at 10, there is simply no evidence that the Plaintiff intended to place Williams in fear.  See Commonwealth v. Gorassi, 432 Mass 244, 248 (2000), quoting Commonwealth v. Musgrave, 38 Mass. App. Ct. 519, 524 n.7 (1995) ("the Commonwealth must prove that the defendant engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm") (emphasis

added). The evidence merely shows that the Plaintiff's gun was visible to Williams, not that he pointed it or "brandished" it, as erroneously reported by Waters. <u>See</u> Pl. Stmnt Mat. Facts at 22. Therefore, the Defendants are not entitled to summary judgment on Plaintiff's claim of malicious prosecution.

## **CONCLUSION**

Wherefore, the Plaintiff requests that this Court deny the Defendants' motion for summary judgment.

Dated: March 17, 2006

Respectfully Submitted,
Plaintiff Joseph Losano
By his attorneys

//s// Michael Tumposky
Stephen Hrones
BBO No. 242860
Michael Tumposky
BBO No. 660618
Hrones, Garrity & Hedges
Lewis Wharf-Bay 232
Boston, MA 02110-3927
T) 617-227-4019

## **CERTIFICATE OF SERVICE**

I, Michael Tumposky, hereby certify that on this the 17th of March, 2006, I have served a copy of the foregoing, where unable to do electronically, on all counsel of record in this matter.

//s// Michael Tumposky
Michael Tumposky